No. 33,501

James M. Hoover, *Appellee*, v. Charles D. Roberts et al. (*Defendants*); Blanche Hyland, William H. Roberts, Alex Roberts and Jessie Peterson, *Appellants*.

(74 P. 2d 152)

Opinion filed December 11, 1937.

*J. R. Hyland* and *H. N. Hyland,* both of Washington, for the appellants.

*F. R. Lobaugh,* of Washington, *Charles L. Hunt* and *Frank C. Baldwin,* both of Concordia, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a suit in partition. Plaintiff prevailed, and four defendants appeal.

Appellee, James M. Hoover, claims a fractional interest in the real estate by virtue of certain conveyances from devisees under the will of Edward Roberts, Sr., deceased. The will was duly probated on November 22, 1922, and has not been contested. The appellant, Blanche Hyland, contends the trial court erred in holding she had only a one-eighth interest instead of a one-fifth interest in the land involved. She acquired the interest of Walter Ware, who in turn had acquired the interest of one of the devisees under the will. The extent of her interest depends upon the construction of the will.

The other three appellants, Jessie Peterson, William H. Roberts and Alex Roberts, were devisees under the same will. The interest of each of the four appellants is the same. The last three named appellants conveyed to plaintiff. They contend that according to the construction placed upon the will by this court on June 6, 1936 (*Hoover v. Roberts,* 144 Kan. 58, 58 P. 2d 83), they each received a one-fifth interest thereunder. They further insist that at the time they executed and delivered their respective deeds to plaintiff, which was prior to the opinion of this court, they thought they had only a one-eighth interest. They contend the trial court erred in holding they conveyed their entire interest. This requires examination of the deeds. The appellants who conveyed to plaintiff further urge, if their contention is correct, they are each entitled to be paid for the value of the difference between a one-fifth and a one-eighth interest or for a three-fortieths interest in the land, and for a corresponding share in the crops for the years 1935 and 1936.

Since the basis for the extent of the various interests is the will, we shall first direct our attention thereto. After making provision for the payment of his debts and funeral expenses, the will provided:

"Second: I give, devise and bequeath to my beloved wife, Margaret Roberts, all of my real estate as follows: (Here follows description of land.)

"To have and to hold the same, to her for and during her natural life and at her death to be disposed of as hereinafter provided.

"Third: I further give, devise and bequeath to my beloved wife above named, all of the rest and residue of my estate, real, personal and mixed, of which I shall die seized and possessed, or to which I shall be entitled at my decease, including household furniture, goods, chattels, moneys, etc.

"To have and to hold the same, to her for and during her natural life, and at her death to be disposed of as hereinafter provided.

"Fourth: It is my will and desire that my beloved wife, heretofore named, shall have all the benefits and use of all the property heretofore described during her natural life, and at her death to be divided as follows: To be equally divided among my eight children, share and share alike, as follows: Edward Roberts, Jr., Lizzie Tucker, Daniel Roberts, William H. Roberts, Alex Roberts, Maggie Testerman, Jessie Peterson, and Charley Roberts; *and should any of the children, heretofore named, die intestate before the execution of this will, and before the death of my beloved wife, then it is my will that the said share of said deceased child revert to my estate, and be divided among the remaining children, as aforesaid."* (Italics inserted. )

The italicized portion of the will was before us for consideration on the former appeal of this same partition suit. The appellant, Blanche Hyland, in the instant case was also the appellant in that case. The other three appellants in the instant case were not parties to that suit. Appellee held conveyances from them at that time and we assume thought there was no occasion for joining them in the suit. The trial court in that case held it had previously construed the will in a mortgage-foreclosure case, holding the interests of the devisees to be a one-eighth interest, and since no appeal was taken therefrom, that judgment had become final. The appellant, Blanche Hyland, contended in that case the court's former judgment in attempting to construe the will was void for the reason it had reformed the will in part, and that it had no jurisdiction to reform a will.. We said the judgment in the foreclosure case, insofar as it had construed the will, was not only correct but final, since no appeal had been taken therefrom. That particular portion of our opinion pertained to the exact phrase in the above portion of the will now in question, to wit, "before the execution of this will." We agreed the trial court had correctly construed that phrase to mean, "before the will was made operative by testator's death." We, however, held that the substitution of the words "without issue" for the word "intestate" in the same paragraph constituted not construction but reformation. We agreed with appellant, Blanche Hyland, that the district court had no jurisdiction insofar as the reformation part of its judgment was concerned, and hence Blanche Hyland was not precluded from attacking that portion of the judgment in order to determine what interest she acquired. We did not direct the entering of any particular judgment, but simply reversed the judgment of the trial court.

When the mandate was received by the trial court Blanche Hyland moved for judgment on it. The motion was overruled. One of the errors urged in the instant case is the overruling of that motion. Ap-

pellee contends a mere judgment of reversal left the suit just as though no judgment had ever been rendered, and in support of that contention cites 4 C. J., Appeal and Error, § 3249, and 3 Am. Jur., Appeal and Error, § 1191. On the same day the mandate reached the trial court, the three appellants herein who conveyed to plaintiff had filed a partition suit in the same court involving the same land. Appellee moved to make them parties defendant in the instant case. The motion was allowed, and the appellant, Blanche Hyland, contends the trial court erred in that respect. The three appellants, however, filed their answers to the petition of appellee, in which they set up the will and alleged in substance: the will had never been contested, annulled or set aside; testator left surviving him the following heirs at law, and devisees under his will (here appear the same names as those appearing in the will); testator had been the owner of the land in fee simple; Elizabeth Tucker, Daniel Roberts and Maggie Testerman, children and heirs at law and devisees under the will, each died intestate after the death of the testator and before the death of the widow, and under the terms and provisions of the will their respective shares and interests in the land reverted to the estate of the testator and became the property of the remaining five children, share and share alike; the widow died sometime prior to the filing of this action and at her death the shares of these answering defendants became definitely fixed under the terms of the will; that the share of each of them was an undivided one-fifth interest in the land. Prior to the filing of this action each of said answering defendants sold and conveyed to the plaintiff an undivided one-eighth interest therein and each retained the remainder of his interest or a three-fortieth interest; the consideration for a one-eighth interest was $800; each of them is entitled to his proper share and interest in the rents and profits of the land for the years 1935 and 1936, which are being unlawfully withheld by plaintiff and codefendants.

The three appellants then prayed that each be adjudged to be the owner of a three-fortieth interest in the land and for an accounting of their proper share in the rents and profits.

To this answer appellee filed a reply which admitted the will and, in substance, alleged the former judgment in the foreclosure suit had construed the will, which judgment was never appealed from and hence the interests of the answering defendants were undivided one-eighth interests and that plaintiff was the holder and owner of the sheriff's deed issued in the mortgage-foreclosure action.

Appellee then pleaded in the alternative, in substance, as follows: in the event the judgment in the mortgage-foreclosure action was determined to be wholly or partially void with reference to the construction of the will, that the answering defendants acquired only one-eighth interests thereunder for the reason that while three of testator's children had predeceased their mother none had died before the will became operative (that is, at the testator's death), and hence the contingency named in the will as cutting off the interest of the children or any of them, never occurred; the three answering defendants had executed and delivered separate warranty deeds, together with their respective spouses, in which they conveyed all of their title and interest in the land to plaintiff.

Appellee also filed an amended reply to the separate answer of the defendant, Walter Ware. Blanche Hyland acquired the interest of Walter Ware and was later substituted for Walter Ware as a party defendant. The amended reply in substance alleged: the interest now held by Blanche Hyland was the interest of Charles Roberts, which had been acquired by Charles Roberts under the terms of the will; since the commencement of the action he had acquired the interests of the defendant Lola M. LePage and Virgil M. Thompson (they held the interest of Edward Roberts, Jr., who had died testate), and the one-sixteenth interest of Charles Testerman; Edward Roberts, Sr., died November 8, 1922, and his will was probated on November 22, 1922; the will had been construed in the mortgage-foreclosure action; no appeal had been taken from the judgment and the interest of Blanche Hyland was therefore an undivided one-eighth interest.

The amended reply then contained in substance the same alternative pleading as was contained in the reply to the three answering defendants previously mentioned.

Upon the retrial the district court construed the words "before the execution of this will" to mean "before the lawful provisions of the will had been fully carried out and before the death of the wife." Since the estate had been fully administered before any of the children died, the trial court held the contingency mentioned in the will had not occurred, and hence the devisees each acquired an undivided one-eighth interest. The construction was contrary to that placed upon the same portion of the will in the mortgage-foreclosure case which we said had become final. Neither was it in accord with any claim made by the pleadings in the instant case.

We shall first discuss the interest of the appellant, Blanche Hyland. Her statement that this court on the former appeal held her interest to be a one-fifth interest, is not accurate. The trial court took the position in the first partition suit that Blanche Hyland was estopped from raising the question of her interest as the interests of all devisees and those in privity with them had been settled in a mortgage-foreclosure judgment in 1932. We said the trial court erred in so holding. We expressly pointed out that the portion of its judgment in which it had substituted the words "without issue" for the word "intestate" constituted excision and therefore reformation and not construction, and that since it had no jurisdiction to reform the will that portion of its judgment was void, and was subject to collateral attack. But that is not all we said. We said just as emphatically the trial court in the foreclosure case had jurisdiction to construe the will and that the portion of its judgment which constituted construction had become final, since no appeal had been taken therefrom. We pointed out that where the court had jurisdiction the judgment unappealed from, regardless of whether erroneous, became a finality. (See cases cited, page 62.) See, also, *Kistler v. Fitzpatrick Mortgage Co.,* 146 Kan. 467, 71 P. 2d 882, decided October 9, 1937, dealing with the precise subject of appeals from judgments construing and reforming wills.

Now, what was the judgment concerning the controversial portion of the will in the mortgage-foreclosure case? It reads:

"That that part of paragraph 4 of said last will and testament which reads as follows: 'and should any of the children, heretofore named, die intestate before the execution of this will, and before the death of my beloved wife, then it is my will that the said share of said deceased child, revert to my estate, and be divided among the remaining children, as aforesaid,' is ambiguous and uncertain and does not express the intention intended by the testator at the time he made and executed said will; that said testator was unaccustomed to the use and meaning of legal phraseology and left the matter of selecting the language incorporated in his will to a scrivener, who, himself, was a layman and not well versed in legal terminology; that in that portion of paragraph four hereinbefore quoted, the word 'intestate' was inadvertently and by mistake used in said paragraph for and instead of the words 'without issue,' as was intended by the testator, and the language 'before the execution of this will' was intended by the testator to mean before the will was made operative by testator's death.

"The court, therefore, finds that it was the true and actual intention of the testator when he executed said will that that portion of paragraph four hereinbefore quoted should provide and mean that if any of his children named in said paragraph should die without issue *and subsequent to his, testator's*

*death, but before the death of his wife, Margaret Roberts,* then the share such deceased child would have taken had he survived the said Margaret Roberts should be divided among the remaining children mentioned in said paragraph four." (Italics inserted.)

No appeal, as previously stated, was taken from that judgment. The judgment must stand, with the exception of the reformation portion which substituted the words "without issue" for the word "intestate."

Three children had died intestate and one testate before the death of the widow, with the result the three shares reverted to the estate to be divided share and share alike among the five remaining children. Irrespective, however, of the judgment in the foreclosure case, the same conclusion may be reached in another way. Construing the words "before the execution of this will" as meaning "before the will was made operative by testator's death," the controversial paragraph would then read:

"And should any of the children, heretofore named, die intestate before my death, and before the death of my beloved wife, then it is my will that the said share of said deceased child revert to my estate, and be divided among the remaining children as aforesaid."

It is clear testator, in contemplation of his wife outliving him, had in a previous paragraph devised a life estate to her with remainder to his eight children, share and share alike. Having made that provision, it probably then occurred to him some of his children might die before he and his wife died, and that they might so die unexpectedly without having disposed of the interest by will which he had given them in his estate. Considering the above paragraph together with the other portions of the will, it seems reasonable from the language employed, although poorly stated, the testator intended that if any of his children died intestate before the two contingencies occurred, he intended the interest he had devised to them should revert to his estate to be divided between the remaining children, as aforesaid; that is, share and share alike. Giving force to that intention, the division of the remainder must be made in five shares.

What is the result as to the interests of the parties to this action? The three who so died intestate were Lizzie Tucker, Daniel Roberts and Maggie Testerman. Edward Roberts, Jr., had died testate. The five remaining shares were therefore the shares of Edward Roberts, Jr., Charles D. Roberts, William H. Roberts, Alex Roberts and Jessie Peterson. The appellant, Blanche Hyland, holds the

one-fifth interest of Charles D. Roberts, subject, of course, to the mortgage against it. Appellee holds the one-fifth interest of Edward Roberts, Jr., who died testate and whose interest appellee purchased from his daughters, Lola M. LePage and Virgil M. Thompson, to whom that interest had been devised by Edward Roberts, Jr. This disposes of two fifths of the interests. It leaves in question the three-fifths interest which appellee claims he acquired through the conveyances from the other three appellants. What did they convey to him? They conveyed to him by warranty deed. The pertinent portion of the granting clause in the three deeds is the same, and reads:

". . . do by these presents grant, bargain, sell and convey unto said party of the second part, his heirs and assigns, all the following described real estate, situated in the county of Washington, and state of Kansas, to wit: *The undivided one-eighth (⅛) interest of the said grantor,* Jessie E. Peterson, in and to (description of land); *being all of the interest of said grantor as the heir at law and devisee under the last will and testament of Edward Roberts, deceased, late of Washington county, Kansas,* former owner of entire interest in said real estate." (Italics inserted.)

We have previously stated the general contention of the grantors as disclosed by their answer. In the instant case parol testimony was admitted without objection in order to assist in arriving at the intention of the parties. In the case of *Mayberry v. Beck,* 71 Kan. 609, 81 Pac. 191, it was held:

"Where there is a latent ambiguity in the description of the land conveyed by deed parol evidence may be received, not to contradict the instrument, but to explain the ambiguity, and to that end testimony as to the situation and condition of the land conveyed, the circumstances under which the conveyance was made and the practical construction put upon the conveyance by the parties may be admitted." (Syl. ¶ 3.)

The evidence of these three appellants was to the effect the entire quarter section of land was sold on the basis of $40 per acre, or for the sum of $6,400, appellants being paid approximately $800 each. In substance, the testimony most favorable to them was that they intended to convey all of their interest, but if they had known they owned a one-fifth interest they would have demanded a larger portion of the total consideration of $6,400. Of course, it was the province of the trial court to give such weight and credence to that and other evidence as seemed proper to it in view of all the circumstances. Louis J. Hoover, the father of appellee, handled the negotiations for the purchases from the three appellants. His testimony in substance was that he bought their interests on the theory he was

purchasing their entire interest; it was his understanding that is what appellee was getting by the deeds; the property was appraised at $6,400 in the partition suit, and they elected to take it at that figure; he was not interested in the exact shares of the parties, but was concerned about getting the entire farm. The trial court made findings of fact concerning the circumstances surrounding the conveyances. The pertinent findings are:

"13. That at the time of the execution and delivery of the deeds mentioned and referred to in the preceding finding, Jessie Peterson, William H. Roberts and Alex Roberts had full knowledge of all facts affecting, fixing and determining their interest in said real estate, and the deeds mentioned were prepared and written by counsel representing the grantors.

"14. Plaintiff in accepting the deeds and paying consideration therefor believed grantors were conveying all interest they had in the real estate to him.

"15. During the negotiations between the plaintiff and said defendants, said defendants knew plaintiff was negotiating for and intending to buy the interests of the heirs of Lizzie Tucker and Daniel Roberts, deceased, and Jessie Peterson and William H. Roberts furnished plaintiff the names and addresses of such heirs, and counsel representing said defendants prepared and forwarded letters to some of those heirs, urging the sale of their interests to plaintiff, and at no time did any of said defendants give plaintiff to understand that such heirs had no interest in the property, or that the said defendants were not conveying plaintiff all of the right, title and interest which they claimed in said real estate.

"16. The defendants Jessie Peterson, William H. Roberts and Alex Roberts made no claim to any interest in the property or rents and profits thereto, until after decision of the supreme court of Kansas reversed the decision of this court in this action, which is now being retried."

We have carefully examined the record and cannot say these findings are unsupported by substantial evidence. It seems clear from the record, aside from the deeds, the grantors knew the grantee was endeavoring to buy all the interests of the various owners and that the grantors intended to convey their full interest, whatever that interest might be. True, they may have then believed they had only a one-eighth interest, but nevertheless they intended to convey their entire interest. For quite a number of years there had existed uncertainty and some dispute as to the exact interest each of the living children received under the will. In view of these facts, had the grantors not intended, irrespective of the exact interest they owned, to convey their entire interest, it is difficult to understand why they granted and conveyed not only the one-eighth interest but all of their interest under the will.

G. S. 1935, 67-202, provides:

"The term 'heirs,' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple; *and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant."* (Italics inserted.)

In *Platt v. Woodland,* 121 Kan. 291, 246 Pac. 1017, various statutes were analyzed, and it was said:

"From these statutes it is clear that, so far as conveyance by deed is concerned, the distinction between estates proper and other interests in land has been obliterated, and the result is, the word estate is used in R. S. 67-202 as a general and not a technical term. It connotes whatever the grantor could convey, and the statute is to be read as though it were phrased, 'Every conveyance of real estate shall pass all the interest of the grantor therein, unless the intent to pass a lesser interest shall expressly appear or be necessarily implied in the terms of the grant.'" (p. 298.)

Certainly less than the entire interest of the grantors was not expressly conveyed in the instant deeds. It cannot be said the intent to convey a lesser interest is necessarily implied from the terms of the grant. It follows grantors each conveyed their entire interest to appellee, James M. Hoover. (See *Roxana Petroleum Corp. v. Jarvis,* 127 Kan. 365, 369, 273 Pac. 661, and cases therein cited. See, also, 18 C. J. Deeds, §§ 219, 254; *Costello v. Graham,* 9 Ariz. 257, 80 Pac. 336; *Sequatchie Land Co. v. Coal, Coke & Land Co.,* 137 Tenn. 313, 193 S. W. 106.) Appellee is therefore the owner of an equal undivided four-fifths interest in the land subject, of course, to valid liens or encumbrances which may exist against such interest.

Appellants stress equitable doctrines and in particular what was said in the early case of *Jeakins v. Frazier,* 64 Kan. 267, 67 Pac. 854. In view of the findings of fact in the instant case, the equitable doctrine there announced is hardly applicable here. Moreover, in that case plaintiff's deed did not purport to convey anything other than a one-half interest.

The contention of appellant grantors, the trial court erred in making them additional parties defendant, is not well taken. No useful purpose could have been served by a multiplicity of suits involving the question of interests in the same land and under the same will. The same identical issues could have been raised in the suit filed by the grantors. Their having been made parties to this action has not affected the interest of the appellant, Blanche Hyland, in the slightest.

The action is remanded with directions to enter judgment in accordance with the views herein expressed.

ALLEN, J. (dissenting): Under the terms of the will, the property was devised to the children in fee, but if any child should die intestate before the life tenant, the share of the child so dying should go to the other children. The gift over was held good.

As the effect of this decision may not be apparent at first glance, it may be well to consider and compare certain limitations. Suppose a testator, by his will, should devise land in any one of the following forms:

(1) To A and his heirs, and if he die intestate to B and his heirs. (2) To A and his heirs, but if he does not transfer the land by deed or by will, then to B and his heirs. (3) To A and his heirs, with power to dispose of the land by deed or by will, and what remains undisposed of, to B and his heirs. (4) To A and his heirs, but if he shall die without having disposed of the property by deed or by will, then to B and his heirs.

In the first illustration as A has the fee he may transfer the land either by deed or by will. To say that if A dies intestate the land is to go to B, is merely an indirect way of saying that A may transfer the land by deed or by will. It is stated in a more direct form in No. 2, but in substance it is the same. Again No. 3 is not different. In illustrations Nos. 1 and 2 he has power to dispose of all or part by deed or by will; No. 3 expresses the same thing in positive form. The variation in the formula in illustration No. 4 does not change the meaning. (Kale's Estates, Future Interests, 2d ed., § 717; Gray, Restraints on Alienation, §§ 57-74.)

Frequently the gift over on intestacy is coupled with a collateral event. In the case at bar the provision was that if any child should die intestate before the life tenant.

In *Doe v. Glover,* 1 C. B. 448, there was a devise to A and his heirs, but if A should die without issue then living, *and should not have disposed of his interest in his lifetime,* then to B. It was held the gift over was good. The court said:

"I am unable to perceive any objection to the gift over in this case, as an executory devise. There is nothing in it that is repugnant to, or inconsistent with the prior devise; nor does it operate any restraint on alienation; on the contrary, it expressly recognizes the power of the son to alien the estate during his lifetime. . . . It is a very rational and proper mode of disposing of the estate." (pp. 460, 461.)

But in *Holmes v. Godson,* 8 De G., M. & G. 152, and subsequent cases, the law in England was settled otherwise.

The leading American case is *Jackson v. Robins,* 16 Johns. (N. Y.) 537. The gift was to A in fee, but in case of her death without disposing of the land by will or by deed, then to B. The court held the gift over was void.

The theory of Chancellor Kent is thus expressed:

"Nor can an executory devise or bequest be prevented or destroyed by any alteration whatsoever, in the estate out of which, or subsequently to which, it is limited. The executory interest is wholly exempted from the power of the first devisee or taker. If, therefore, there be an absolute power of disposition given by the will to the first taker, as if an estate be devised to A in fee, and if he dies *possessed* of the property without lawful issue, the remainder over, or remainder over the property which he, dying without heirs, should *leave,* or without *selling* or *devising* the same; in all such cases the remainder over is void as a remainder, because of the preceding fee; and it is void by way of executory devise, because the limitation is inconsistent with the absolute estate, or power of disposition expressly given, or necessarily implied by the will. A valid executory devise cannot subsist under an absolute power of disposition in the first taker. When an executory devise is duly created, it is a species of entailed estate, to the extent of the authorized period of limitation." (4 Kent's Commentaries, 14th ed. 305.)

The theory of Chancellor Kent was that an executory devise depending on a contingency within the control of the first devisee was bad. This was putting an unauthorized twist to the doctrine of the indestructibility of executory devises as announced in *Pells v. Brown,* Cro. Jac. 590. The fallacy in his argument has often been pointed out. (Gray, Restraints on Alienation, § 70; Simes, Future Interests, ch. 34.)

However, many courts follow the view of Chancellor Kent in holding the first taker has a fee simple absolute and that the gift over is void.

*McNutt v. McComb,* 61 Kan. 25, 58 Pac. 965; *Van Horne v. Campbell,* 100 N. Y. 287, 3 N. E. 316; *Williams v. Elliott,* 246 Ill. 548, 92 N. E. 960; *Sweet v. Arnold,* 322 Ill. 597, 153 N. E. 746; *Wells v. Jewell,* 232 Ky. 92, 22 S. W. 2d 414; *In re Estate of Wadsworth,* 176 Minn. 445, 223 N. W. 783; *Drake v. Byram,* 100 N. J. Eq. 343, 134 Atl. 758; *Billmyer v. Billmyer,* 296 Penn. 31, 145 Atl. 674.

In this state since *Markham v. Waterman,* 105 Kan. 93, 181 Pac. 621, the case of *McNutt v. McCombs* has not been followed. In the Markham case it was held that the fee given the first taker is cut down to a life estate coupled with a power to convey the fee, with a remainder over. (*Pricer v. Simonton,* 134 Kan. 211, 5 P. 2d 835.) Compare Restatement of Property, section 108, *Comments e*

and *f*. In the present case we go back to the rule in *Doe v. Glover*, supra. (See *In re Estates of Darr*, 114 Neb. 116, 206 N. W. 2.)

It may be admitted that no valid reason can be given why an executory gift over on intestacy should not be good. If land is devised to A and his heirs and if he die intestate (or, if he should not dispose of the land by deed or by will) then to B, it is difficult to perceive any good reason why the gift to B should not be considered valid, subject to be defeated by a disposition of all the property by A, just as a remainder after a life estate with a power to convey is valid, but subject to be divested by the exercise of the power. If the question were *res integra* I would much favor this solution, but as we have settled the rule otherwise there seems to be no good reason to weaken the established rule by this departure.

In short, in *McNutt v. McComb* we adopted the theory of Chancellor Kent that the executory devise over was void, and that the first taker received a fee simple absolute. We departed from that view in the Markham case. Now we are shifting to a third position that the gift over is good.